UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:03-00229 |
| ) | Judge Echols |
| PARLEY DREW HARDMAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Parley Drew Hardman's "Motion for Judgment of Acquittal" (Docket Entry No. 132) to which the Government has responded in opposition (Docket Entry No. 143). By way of that motion, Defendant requests a judgment of acquittal on the nine counts of conviction returned by a jury on September 20, 2005.

### I. FACTUAL BACKGROUND

This is the second criminal case filed against Defendant Parley Drew Hardman ("Hardman") for events which arose after the relationship between Hardman and his ex-wife Cherylynn Collins ("Collins") ended. In the first case, United States v. Hardman, Case No. 3:02-00179, Hardman was convicted of (1) solicitation to commit a federal crime of violence, that being the interstate stalking of Collins; (2) solicitation to commit Collins' murder; and (3) conspiracy to commit the interstate stalking of Collins.

While in jail on those convictions, Hardman, together with his new girlfriend, Brenda L. Lampley ("Lampley"), devised a scheme to

1

retaliate against Collins and also to get back at those Hardman viewed as being responsible for his incarceration, including witnesses who testified against him at the first trial and the Assistant United States Attorney who prosecuted the case. After the scheme was uncovered, a grand jury returned a nine count Indictment against Hardman and Lampley[1] (collectively "Defendants").

Count I charged the Defendants with solicitation to commit a federal crime of violence, that being to kill Assistant United States Attorney Sunny A.M. Koshy ("Koshy") on account of Koshy's performance of his official duties. Count II alleged that the Defendants conspired to kill Koshy on account of the performance of his official duties. In Count III, Defendants were alleged to have solicited a federal crime of violence against a witness, that being Marvin Drake a/k/a Marvin Droznek ("Droznek"), in retaliation for previously testifying against Hardman in the prior proceeding, and in Count IV to have conspired to retaliate against Droznek. Count V alleged Hardman solicited a crime of violence against Joseph Lucas a/k/a Joseph Roselli ("Roselli") in retaliation for previously testifying against Hardman in the prior proceeding. Counts VI and VII related to the interstate stalking of Collins, with Count VI alleging solicitation to commit interstate stalking and Count VII alleging conspiracy to commit interstate stalking. In Count VIII, Defendants were charged with soliciting a federal

---

[1]Lampley was charged in all but Count V.

crime of violence, that being to retaliate against Collins for previously having testified against Hardman. Finally, in Count IX, Defendants were charged with conspiring to retaliate against Collins for having been a federal witness against Hardman.

Hardman exercised his right to trial. After testimony from the intended victims; Juan Canela, a jail inmate through whom Defendant solicited the murders of Roselli and Droznek; an undercover agent posing as a Mafia hit man; Lampley; the introduction of numerous recorded conversations between Hardman and others about the scheme; and other evidence; including another jail inmate presented by the Defendant as an entrapment witness, the jury returned a verdict of guilty against the Defendant as to all counts.

## II. **STANDARD OF REVIEW**

The standard for determining whether a motion for a judgment of acquittal should be granted is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Landham, 251 F.3d 1072, 1083 (6th Cir. 2001) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original). Circumstantial evidence alone may be sufficient to support a conviction, and it is not necessary that the evidence preclude every reasonable hypothesis except that of guilt. See, United States v. Reed, 167 F.3d 984, 992 (6th Cir. 1999). Moreover, in ruling on a motion for a judgment of acquittal, the Court is not

3

permitted to weigh evidence, make credibility determinations, or substitute its judgment for that of the jury. See, United States v. Hilliard, 11 F.3d 618, 620 (6th Cir. 1993).

### III. LEGAL ANALYSIS

#### A. Sufficiency of the Evidence On Counts VI and VII

At the close of the Government's case, and again in the present motion, Defendant seeks a judgment of acquittal as to all counts. However, the Motion for Judgment of Acquittal incorporates the arguments raised at trial and those arguments focused almost exclusively on the sufficiency of the evidence with respect to Counts VI and VII.[2]

With respect to Counts VI and VII, Defendant argues that because there was no evidence the intended victim, Collins, was aware of the plan until after the scheme had been discovered and both Hardman and Lampley had been apprehended, Collins could not have been placed "in reasonable fear of serious bodily injury" as alleged in those Counts. Thus, Defendant argues he is entitled to an acquittal on those Counts.

Defendant's argument misapprehends the nature of the charges contained in Counts VI and VII. Both charge Defendant with inchoate crimes - solicitation and conspiracy.

---

[2]Insofar as Defendant is asserting that there was insufficient evidence to convict him on the remaining Counts, it suffices to note that the Government presented overwhelming evidence of Hardman's guilt, much of it tape recordings of Defendant's own incriminating conversations with his Co-Defendant and tape recorded conversations between Hardman and an undercover agent.

4

Count VI alleges that Defendant and Lampley solicited the interstate stalking of Collins in violation of 18 U.S.C. § 373.[3] So far as is relevant, 18 U.S.C. § 373 provides:

> (a) Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned[.]

18 U.S.C. § 373(a). "As for the intent element of the crime, . . . in order to establish that the defendant engaged in conduct in violation of § 373, 'the government must prove by strongly corroborative circumstances that the defendant had the intent that another person engage in conduct constituting a crime described in Title 18 . . . and that the defendant actually commanded, induced or otherwise endeavored to persuade the other person to commit the felony.'" United States v. Talley, 164 F.3d 989, 996 (6th Cir. 1999)(quoting, United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989)).

In this case, more than sufficient evidence was presented to the jury from which it could determine that Defendant had the intent that another person engage in the interstate stalking of Collins, notwithstanding that Collins was unaware of the plan until after it had been thwarted. The evidence showed that Defendant asked a purported Mafia hit man to leave Nashville, Tennessee to

---

[3] In Count VI, Defendants were also charged with aiding and abetting in violation of 18 U.S.C. § 2.

5

travel to Michigan to either shoot Collins, or, at a minimum, break her legs.[4]

Most certainly being shot or having one's legs broken would place one in reasonable fear of serious bodily injury. The crime, however, was in the asking and Defendant clearly asked the alleged hit man for a result which would place Collins in fear of serious bodily injury. Therefore, the Motion for Judgment of Acquittal on Count VI must be denied.

Count VII charges the Defendant with conspiring with Lampley to commit interstate stalking against Collins in violation of 18 U.S.C. § 371. "A conspiracy is an agreement between two or more persons to accomplish an unlawful plan." United States v. Chandler, 376 F.3d 1303, 1315 (11th Cir. 2004)(citing 18 U.S.C. § 371). "The essence of the conspiracy is the agreement to commit an unlawful act." Id.

The distinguishing factor between the offense of conspiracy and an underlying substantive offense is that "agreement is the essential evil at which the crime of conspiracy is directed." Iannelli v. United States, 420 U.S. 770, 777 n.10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Hence, the agreement itself "remains the essential element of the crime." Id.[5]

---

[4]To assist the "hit man" in completing his tasks, Defendant gave him pictures of Collins, told him that she lived in Plymouth, Michigan, and that she frequently visited the Elks Club and Club Canton to participate in country music dancing.

[5]To establish a conspiracy under 18 U.S.C. § 371, the Government must prove "(1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the

6

Here, there is no question that sufficient evidence was introduced from which a jury could find (1) an agreement between Hardman and Lampley to engage in the interstate stalking of Collins, (2) an overt act in furtherance of that conspiracy, and (3) Defendant's voluntary joinder in that conspiracy. The jury could further find that the intent of the conspiracy was to place Collins in reasonable fear of serious bodily injury, even though she was unaware of the scheme as it was unfolding.

The evidence showed that Hardman agreed by telephone to meet with an undercover law enforcement agent[6] at the Metro Nashville Davidson County Criminal Justice Center where Hardman was housed after his convictions in the first case. Hardman called Lampley from the Criminal Justice Center and the two discussed the fact that a meeting had been set up with the undercover law enforcement agent and that the agent was to be given money for his travel expenses. Later, Hardman met with the agent as planned and during that meeting provided information to the agent about Collins

---

time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged." United States v. Miller, 161 F.3d 977, 985 (6th Cir. 1998). None of the elements requires the completion of the offense which is what Defendant necessarily suggests by arguing that Collins was unaware of the scheme until after it had been discovered.

[6]Obviously, neither Hardman nor Lampley knew at the time they were dealing with an undercover agent. Both thought they were dealing with a Mafia hit man.

7

including where she lived and liked to dance. Hardman also gave the agent pictures of Collins with her faced circled in pen and discussed causing serious bodily injury to Collins. That same day, Lampley met with the agent and provided him with information about the prior case and paid him for his travel expenses.

Such evidence shows an agreement to commit a federal crime of violence, i.e. the interstate stalking of Collins. The evidence also clearly shows that Defendant's intent, at the time the agreement was made, was to have Collins placed in fear by having either her legs broken or by having her shot. Because more than sufficient evidence exists to establish a conspiracy to commit the crime of interstate stalking of Collins, Defendant's Motion for Judgment of Acquittal on Count VII must be denied.

**B. Rule 404(b) Evidence**

As an alternative to outright acquittal, Defendant asserts that a mistrial[7] should have been declared because of the introduction of a CD containing the song "Cold as Ice"[8] (Govt. Ex. 21) and an accompanying letter from the "Phoenix Foundation" (Govt. Ex. 22), both of which were described as having been sent to

---

[7]Although the alleged wrongful denial of a motion for a mistrial may be more properly the subject of a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, the present Motion for Judgment of Acquittal incorporates the arguments raised during trial on Defendant's Rule 29 motion. Part of Defendant's argument was that this Court wrongfully admitted evidence which was not otherwise admissible under Rule 404(b). Accordingly, the Court will address that argument in this Memorandum.

[8]On the CD, the song is repeated twenty-two times.

8

Collins at the behest of the Defendant. Defendant asserts that the introduction of those items was in error because the Government sought their introduction as an aid to show reasonable fear on the part of Collins but then argued, somewhat incongruously, that Collins did not have to actually have been placed in fear for a conviction to be proper under Counts VI and VII.

Regardless of the arguments made by the Government at the time of the introduction of Exhibits 21 and 22, the introduction of those exhibits was not error. Because of the relationship between the Defendant and certain named persons involved in the first case who became intended victims of the Defendant in this case, coupled with the close proximity in time between the two cases, the Court found at the beginning of this case that certain facts of the two cases were inextricably intertwined. Accordingly, the Court found that some of the facts of the first trial were relevant and admissible in this trial. For example, the identity and nature of the roles played by certain individuals in the first trial are inextricably intertwined with those same individuals becoming victims of the Defendant's sinister plot to solicit someone to murder or maim them in this case. The Court further found, however, that even if some of the facts in the first case were not so inextricably intertwined that they were relevant and admissible in this trial, the same facts would nevertheless be admissible under one or more of the limited purposes listed in Rule 404(b).

Rule 404(b) of the Federal Rules of Evidence prohibits evidence of other acts to be introduced to prove the character of

9

a person in order to show conformity therewith. Fed.R.Evid. 404(b). However, evidence of prior acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Id. Even though other act evidence may be admissible for the limited purpose of showing one or more of the purposes listed in the Rule and not to show the Defendant's predisposition to commit the crime at issue, such limited purpose evidence must be excluded under Rule 403 if the probative value of the evidence is substantially outweighed by the danger of its unfair prejudice.

The Sixth Circuit has set forth the standard which a trial court should utilize in determining the admissibility of "other act" evidence under Rule 404(b):

> First, the trial court must ascertain whether the proffered evidence is relevant and admissible for a proper purpose. United States v. Zelinka,862 F.2d 92, 98 (6th Cir. 1988). To be relevant, "the evidence must relate to a matter which is 'in issue,' and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." United States v. Blankenship, 775 F.2d 735, 739 (6th Cir. 1985)(citations omitted). To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, "whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). Finally, the court must determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; Huddleston, 485 U.S. at 687, 108 S.Ct. at 1500.

United States v. Carney, 387 F.3d 436, 451 (6th Cir. 2004).

During trial, the Court determined that, given the intertwine between some of the facts of this case and the first case, the

10

letter and CD mailed to Collins in the first case were relevant and admissible to the Government's proof of motive, intent, identity and knowledge of the victim, and absence of mistake in this case. As the Court explained in detail to the jury at several points during the trial, the letter and CD were not admitted for the purpose of showing that Defendant committed the crime charged in this case or his propensity to commit the offenses at hand. Rather, the evidence was relevant to the Government's theory that Defendant possessed an unrelenting intent to harm his ex-wife because she left him, took his money, was deceitful, and his previous efforts to hire a hit man to travel to Michigan to break her legs failed and landed him in jail. The Government sought to show that Defendant's feelings and threats of retaliation against his former wife in the first trial had not subsided and Defendant continued to want her killed or her legs broken. Exhibits 21 and 22 also were admissible to show Defendant's motive and intent to harm Collins because his first efforts failed. Defendant's modus operandi in his second effort to solicit a hit man to murder or break Collins' legs was similar to his first effort.

The exhibits also were admissible under Rule 404(b) to show the identity and knowledge of Collins as an intended victim in this case, just as she was in the first case. Defendant furnished the undercover agent, posing as a Mafia hit man, with photographs of Collins and described where she lived, what she liked to do, and where she hung out, as he did in the first case.

With regard to prejudice, both the tape and the letter were relatively innocuous and subject to interpretation. The tape consisted of the repeated recording of a song titled "Cold as Ice." The lyrics easily could be understood as Defendant's intent to berate Collins for being dispassionate, unromantic, selfish, manipulative, cunning and cold-hearted; and/or that she rejected Hardman's romantic overtures. The song does not necessarily suggest Defendant's intent to harm her. The letter, while referring to Collins as a "bitch," speaks in large part about Collin's disloyalty and selfish ambitions, and warns her not to come back to Nashville.

The letter and the CD were not unduly prejudicial under the circumstances and their probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403. Moreover, the Court gave a limiting instruction to the jury when the evidence was admitted which instructed the jury on the limited purpose for which the evidence could be used. The Court also included additional limiting instructions concerning this evidence in the jury charge. See, United States v. Freiman, 930 F.2d 495, 499 (6th Cir. 1991)(holding that the admission of Rule 404(b) testimony regarding prior drug sales by the defendant was proper where "the district court minimized any possible prejudicial effect by giving a limiting instruction").

Defendant defended this case based almost entirely on an entrapment defense. As argued by the Government, the Court further found the CD and letter were relevant to rebut Defendant's theory

12

of entrapment. According to Defendant's theory, he was entrapped by a former jail inmate named Juan Canela who began working with the Defendant's former prosecutor, Sunny Koshy, and the F.B.I. Koshy supposedly was enraged because he was one of Defendant's intended victims in this case.[9] Canela was housed with Defendant in the same jail pod, and he was facing a potential life sentence for his large scale drug operations and past criminal history. He was looking for a way to cut his time by making a deal with the Government. According to the Defendant, Koshy was willing to make a deal with Canela so he could nail the Defendant again, put him away forever, and enhance his own reputation. When Canela heard Defendant asking about Mafia connections, Canela lied and told Defendant he had connections with the Mafia through his drug organization in New York. Many of the facts surrounding Defendant's conversations with Canela are disputed, but Canela called his attorney about Defendant's statements and he put him in contact with Koshy. After Canela told Koshy about Defendant's desire to find a Mafia hit man to murder Koshy, two witnesses at Defendant's first trial, named Roselli and Droznek, and his ex-wife, Koshy contacted the F.B.I. A plan was devised whereby Canela would send excerpts of the transcript of Defendant's first trial

---

[9]According to Defendant's witness Engle Owens ("Owens"), Canela told him he was facing a life sentence, but in order to try to get his sentence reduced he had "orchestrated" a plan to catch Defendant in a plot to kill Koshy, two witnesses in Defendant's first trial, and his ex-wife. He also told Owens that by cooperating with the Government in Defendant's second case he hoped to have his sentence reduced to 30 years, and possibly as low as eight years.

13

which contained testimony of two former Mafia mobsters who testified against Defendant in his first trial and who previously had testified against Mafia leaders in trials in New York and Philadelphia. Allegedly, the Mafia put out contracts for the murder of both of these witnesses and the contracts were still outstanding. Because of this danger, the witnesses had been placed in the Government's witness protection program. After Canela supposedly mailed the transcripts, he told Defendant his Mafia friends in New York were very interested in finding Roselli and Droznek and wanted to talk personally to Defendant. Subsequently, an F.B.I. undercover agent, posing as a Mafia hit man, contacted Defendant while he was in jail, and Defendant solicited him to murder Koshy, Roselli, Droznek, and Collins, his ex-wife.

Defendant further alleged that Lampley, his former girlfriend and co-conspirator, now was trying to use Defendant as a scapegoat to help make a deal for herself against the charges she was facing in the murder for hire scheme. Additionally, Defendant contends that Koshy, as an ambitious Assistant United States Attorney, was out to get Defendant because he had a personal interest in the outcome of the case and carried a vendetta against Defendant because Defendant wanted to have him killed.

An entrapment defense may be countered by evidence admitted pursuant to Rule 404(b):

> A defense of entrapment is often countered by evidence of other crimes and wrongs in order to show the defendant's predisposition to commit the offense or offenses charged. This is a permissible use of such evidence not explicitly referred to in Rule 404(b), but generally recognized.

14

United States v. Blankenship, 775 F.2d 735, 740 (6th Cir. 1985). In this case, the 404(b) evidence also was relevant to Defendant's defense theory that the Government entrapped him to act contrary to his wishes.

The key question for the Court at the time of the introduction of the CD and letter was whether those exhibits were admissible for one or more of the limited purposes listed in Rule 404(b),[10] and if so, was the probative value of such evidence substantially outweighed by the danger of unfair prejudice to the Defendant. The Court also considered the Government's argument that the evidence was inextricably intertwined with the first trial and it was relevant to rebut Defendant's defense theory of entrapment.

Because the Court found (1) that the evidence was admissible for the limited purposes stated and the probative value of the evidence was not outweighed by the danger of unfair prejudice within the meaning of Rule 403 and (2) the evidence was relevant to rebut the Defendant's entrapment defense, there existed no basis for a mistrial. Accordingly, the present Motion for Judgment of Acquittal based on the alleged wrongful admission of Rule 404(b) evidence will be denied.

**C. Counts Relating to Roselli and Droznek (Counts III, IV & V)**

During the colloquy with the Court regarding the Motion for Judgment of Acquittal, Defendant argued briefly that a conviction could not be returned with respect to the charges involving Roselli

---

[10]The limited purposes listed in 404(b) are not exhaustive. United States v. Hardy, 228 F.3d 745, 750 (6th Cir. 2000).

15

and Droznek (Counts III, IV, and V) because the evidence showed that Defendant intended to have those individuals killed to prevent them from testifying at Defendant's proposed hearing on a motion for a new trial in his first case, and not because they had testified against him in the prior trial. Although underdeveloped, this argument too must be rejected.

It is undisputed that Roselli and Droznek testified for the Government and against the Defendant at his first trial. On a Motion for Judgment of Acquittal under Rule 29, "the government must be given the benefit of all inferences which can reasonably be drawn from the evidence." <u>United States v. Head</u>, 927 F.2d 1361, 1365 (6th Cir. 1991). Hence, even if it is accepted that the evidence showed Defendant was seeking to have Roselli and Droznek killed to prevent them from testifying at a hearing on Defendant's motion for a new trial, Defendant knew they would testify again for the Government and against him. Defendant wanted to silence them for repeating the same evidence which convicted Defendant in the first case, i.e. that Defendant hired Roselli through Droznek to break the legs of his former wife, Collins. In actuality, Defendant wanted Roselli and Droznek killed in retaliation for their testifying against him in the first trial and he viewed their appearance as witnesses at the hearing on his motion for a new trial as a good opportunity for the Mafia hit man to kill them.

Defendant's theory that the Government failed to prove that his plan to have Roselli and Droznek killed by the Mafia was not in retaliation for their testifying against him at the first trial is

not supported by the evidence. Accordingly, the Motion for Judgment of Acquittal as it relates to Counts III, IV and V will be denied.

## IV. CONCLUSION

Based upon the foregoing facts, analysis, and the law, Defendant Hardman's "Motion for Judgment of Acquittal" (Docket Entry No. 132) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE